# In the United States Court of Federal Claims

No. 18-977C
(Filed Under Seal: November 28, 2018)
(Reissued for Publication: December 13, 2018)*

```
*************************************
INTEGRAL CONSULTING SERVICES,     *
INC.,                             *
                                  *
              Plaintiff,          *
                                  *    Postaward Bid Protest; RCFC 52.1; Cross-
v.                                *    Motions for Judgment on the
                                  *    Administrative Record; Blue & Gold Fleet
                                  *
THE UNITED STATES,                *
                                  *
              Defendant.          *
*************************************
```

Julie M. Nichols, McLean, VA, for plaintiff.

Sheryl L. Floyd, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

      In this postaward bid protest, plaintiff Integral Consulting Services, Inc. ("Integral") alleges that its proposal in connection with a solicitation issued by the United States General Services Administration ("GSA") for information technology services was improperly evaluated. Integral argues that the GSA erred by deducting points related to Integral's relevant experience without considering all of the information in its proposal. The court is presented with the parties' cross-motions for judgment on the administrative record. For the reasons explained below, the court denies Integral's motion and grants defendant's motion.

### I. BACKGROUND

#### A. Solicitation

      On June 20, 2016, the GSA issued solicitation QTA0016GBA0002 to procure information technology services for the government. Administrative R. ("AR") 4, 270. Specifically, the GSA sought proposals for the Alliant 2 Small Business Governmentwide

---

    * The reissued Opinion and Order incorporates the agreed-to redactions proposed by the parties. The redactions are indicated with bracketed ellipses ("[. . .]").

Acquisition Contract, a multiple-award, indefinite-delivery, indefinite-quantity ("MA/IDIQ") contract. Id. at 270. An awardee under the solicitation would become eligible to receive task orders performed under the contract. Id. at 262-63. The GSA specified that proposals were due by October 7, 2016. Id. at 258.

### 1. Proposal Format and Contents

The GSA required offerors to submit their proposals in seven volumes—general; responsibility; cost-price; past performance; relevant experience; organizational risk assessment; and systems, certifications and clearances. Id. at 365. Within the general volume, offerors were required to include, among other items, a completed copy of the Document Verification and Self Scoring Worksheet ("Scoring Worksheet"). Id. The GSA also instructed offerors to submit a paper copy of the completed Scoring Worksheet. Id. In the Scoring Worksheet, offerors were required to claim points for meeting specific criteria in the solicitation. See id. at 372-73. For every claimed point, offerors were required to include supporting documentation in the proposal showing that they met the relevant criteria. Id.

Of particular import here, the GSA awarded points for offerors possessing relevant experience. Id. at 225-26. Offerors could claim points for performing a project that involved tasks meeting the criteria for a Product or Service Code ("PSC") specified in the solicitation.[1] Id. at 379; see also id. (explaining that a "project" consists of a contract or task order performed for a public or private entity). The GSA identified thirty-five PSCs—which were separated into three groups—that would make a project eligible for points. Id. at 385-87. Offerors could claim additional points for relevant experience if a project (1) involved cost reimbursement, (2) met specific size and complexity requirements, (3) was performed for a unique federal government customer, (4) consisted of a fair opportunity task order awarded against a MA/IDIQ contract, or (5) required work in a foreign location (collectively, "bonus factors"). Id. at 225. To claim points for relevant experience, offerors were required to submit a completed relevant experience project template ("Experience Form"), which contained, among other items, the PSC for which points were claimed. Id. at 381.

After claiming the points, offerors had to substantiate their experience for each project using one of two methods. Id. at 381-83. For the first method, offerors were required to submit the applicable (1) contract statement of work or performance work statement (collectively, "SOW"); and (2) Federal Procurement Data System – Next Generation report ("FPDS-NG report" or "report") that included a PSC applicable to the project. Id. at 381. This method was acceptable when offerors possessed an "available, complete[,] and accurate" FPDS-NG report that "provide[d] verification of all information included on the [Experience Form]." Id. For the second method, the GSA required offerors to submit (1) the FPDS-NG report, if it was available; (2) an Experience Form signed by the relevant contracting officer for the project; (3) a copy of the original contract award document; and (4) a copy of the SOW. Id. at 382-83. This method was provided for offerors who possessed an FPDS-NG report that was "unavailable, incomplete, or inaccurate." Id. at 382. Specifically, the GSA explained this method was appropriate when

---

[1] PSCs are codes are established by the government and "represent major products or services offered by a business." AR 387.

the report "does not substantiate all [of the] information on the [Experience Form] (e.g. [the] PSC being claimed was not the PSC entered in the FPDS-NG) . . . ." Id. (emphasis added).

### 2. Evaluation Process

The GSA explained in the solicitation that the awardees would be selected based on which offerors presented the highest technically rated proposals with a fair and reasonable price. Id. at 402. For evaluating proposals, the GSA set forth a step-by-step review process for each proposal. This process consisted of the following steps, which the GSA was required to perform in the order noted below:

- Step One:  The GSA preliminarily identifies the top eighty proposals by sorting all of the submissions from the highest score to the lowest score based on the offerors' Scoring Worksheets. Id. at 402-03. The GSA then reviews the top eighty proposals in accordance with the following steps.

- Step Two:  For each proposal, the GSA verifies that a support document exists for each of the evaluation elements included on the Scoring Worksheet. Id. at 403. Any discrepancies at this stage are treated as clarifications. Id.

- Step Three:  The GSA conducts an acceptability review to determine whether each offeror submitted all of the requested information for the general volume in the specified manner. Id. If a proposal does not pass the review, the proposal is replaced by the next highest scoring proposal that passes the acceptability review. Id.

- Step Four:  The GSA determines whether a support document substantiates each claimed point on the Scoring Worksheet. Id. If the claimed points are not validated, then (1) those points are deducted, (2) the proposals are resorted based on the revised score, and (3) the proposal is replaced if its new score is below the cutoff for the top eighty proposals. Id.

- Step Five:  The GSA evaluates whether the offeror proposed fair and reasonable pricing. Id. An offeror who fails to provide such pricing is eliminated from the competition. Id.

The GSA explained that the process would continue until the top eighty proposals (or more, in the case of a tie for the last spot) were identified, at which point evaluations would cease and contracts would be awarded to the offerors of those proposals. Id. Offerors were also informed that the GSA did not intend to hold discussions but would conduct clarifications as necessary. Id. at 402. As explained in the Source Selection Decision Memorandum, the GSA adhered to above process for evaluating proposals and did not hold discussions. Id. at 466-68.

## B. Integral's Proposal

In its proposal, Integral claimed [. . .] points. Id. at 499. That total reflects, among other things, Integral's claim to points for relevant experience based on six different PSC projects: 1-1,[2] 1-3, 1-4, 2-1, 2-2, and 3-1.[3] Id. at 497. Integral indicated on the Scoring Worksheet that those projects involved qualifying PSCs with some of the projects also meeting the requirements for certain bonus factors. Id. at 497-98. For each project, Integral attempted to substantiate its experience by relying on the first method: providing a SOW and submitting an FPDS-NG report that confirmed the information on the Experience Form. E.g., id. at 517 (selecting verification method); see also id. at 1277 (noting that Integral relied on the report method to verify each project). But the PSC that Integral claimed on each Experience Form did not match the PSC identified on the associated report. Id. Furthermore, with the exception of Project 2-2, Integral submitted reports that identified PSCs that were not eligible for points. Compare id. at 129-30 (documenting authorized PSCs), with id. at 1277-78 (identifying the PSCs on reports).

The GSA reviewed Integral's proposal in accordance with the procedures noted above. Id. at 1922-35. The GSA reached the fourth step of the evaluation process: verifying that the support documents substantiated every claimed point on the Scoring Worksheet. See id. at 1928-33. At this stage, the GSA deducted points from those claimed in Integral's proposal because Integral did not substantiate its claimed experience.[4] Id. at 1277-79. The GSA explained that Integral attempted to use the first method for validating its experience but failed to verify experience with the claimed PSCs. Id. at 1277-78. Specifically, the GSA stated that Integral selected PSCs on its Experience Forms that did not match the PSCs on the FPDS-NG reports. Id. The GSA proceeded to award credit for Project 2-2 after recategorizing it as Project 1-1 because the associated FPDS-NG report validated experience with a qualifying PSC from the first group rather than (as Integral had claimed) the second group.[5] Id. at 1278; see also supra note 2 (explaining that the first digit in a project number reflects the PSC group). Following its review and alteration, the GSA deducted [. . .] points from Integral's claimed score. AR 1454.

---

[2] For each project number, the first digit represents the PSC group, and the second digit represents the ordinal number of projects the offeror submitted in that group. See AR 225. For example, Integral's reference to Project 1-4 refers to the fourth project with a PSC in the first group. See id. at 497.

[3] Integral also claimed points for Project 1-2 and received credit for that project. Those points are not in dispute.

[4] The GSA's deduction caused Integral to lose the points that it claimed related to the bonus factors. AR 1279. Specifically, those points were removed because the associated projects were no longer verified. Id.; see also id. at 383-85 (requiring validated projects to receive points for bonus factors).

[5] The GSA explained that Integral validated its experience with the necessary type of work because the FPDS-NG report identified PSC D321, which "is a valid PSC code under Group One." AR 1278.

On February 14, 2018, the GSA posted an award notice reflecting that the agency selected eighty-one awardees.[6]  Id. at 480-88.  Integral was not listed as an awardee.  Id.  Integral promptly requested a debriefing.  Id. at 1449.  In a March 9, 2018 debriefing letter, the GSA explained why it deducted points and how that deduction placed Integral below the award cutoff.  Id. at 1450-55.  After it received the debriefing letter, Integral filed a protest with the United States Government Accountability Office ("GAO").  Id. at 1795.  The GAO dismissed the protest on May 22, 2018, because protests concerning the same procurement were pending before this court.  Id. at 1852.

### C.  Procedural History

On July 9, 2018, Integral filed its protest with the court.  Integral alleges that the GSA erred by deducting points when the PSCs on the Experience Forms and FPDS-NG reports did not match.  Specifically, Integral alleges that the deductions are indicative of the GSA's failure to conduct a meaningful comparison of the proposals in violation of Federal Acquisition Regulation ("FAR") 15.304, comply with the terms of the solicitation, and consider all of the information in Integral's proposal.  As a remedy, Integral seeks a declaratory judgment requiring that the GSA consider all of the information in the proposal when evaluating relevant experience and credit Integral with all the points it claimed for its relevant experience.  Integral also requests a permanent injunction precluding the GSA from deducting points from the total claimed by Integral in its proposal and relying solely on the report to evaluate whether its experience was validated.  Pursuant to the schedule they proposed, the parties briefed cross-motions for judgment on the administrative record.  Oral argument was not requested, and the court deems it unnecessary.  The motions are now ripe for adjudication.

### II.  LEGAL STANDARDS

In ruling on motions for judgment on the administrative record pursuant to Rule 52.1(c) of the Rules of the United States Court of Federal Claims, "the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."  A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).  Because the court makes "factual findings . . . from the record evidence," judgment on the administrative record "is properly understood as intending to provide for an expedited trial on the administrative record."  Bannum, 404 F.3d at 1356.

The court reviews challenged agency actions pursuant to the standards set forth in the Administrative Procedure Act.  28 U.S.C. § 1491(b)(4) (2012).  Specifically, "the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A):  a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or

---

[6] The agency exceeded its stated target of eighty awardees as a result of a four-way tie for the seventy-eighth position.  AR 1458.

otherwise not in accordance with law.'" Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004). Under this standard, the court

> may set aside a procurement action if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." A court reviews a challenge brought on the first ground "to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." "When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations."

Centech Grp., Inc. v. United States, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citations omitted) (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001)).

Procurement officials "are 'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process." Impresa, 238 F.3d at 1332 (quoting Latecoere Int'l, Inc. v. U.S. Dep't of the Navy, 19 F.3d 1342, 1356 (11th Cir. 1994)). Thus, the court's review of a procuring agency's decision is "highly deferential." Advanced Data Concepts, 216 F.3d at 1058; see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) ("The court is not empowered to substitute its judgment for that of the agency."). Furthermore, a "protestor's burden of proving that the award was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law is greater [in negotiated procurements] than in other types of bid protests." Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004). And, when a contract is to be awarded on a "best value" basis, procurement officials have "even greater discretion than if the contract were to have been awarded on the basis of cost alone." Id.

### III. ANALYSIS

Integral's thesis is that the GSA improperly deducted points that Integral claimed for possessing relevant experience. In support of that premise, Integral makes a variety of arguments, none of which are persuasive.

Integral first argues that the GSA failed to comply with the solicitation when it concluded that Integral did not validate its relevant experience. Specifically, Integral faults the GSA for limiting its validation inquiry to whether the PSCs on the FPDS-NG reports were the same PSCs that Integral claimed credit for on its Experience Forms. Given Integral's reliance on the first method for verifying experience, the key consideration here is how offerors using that method could validate their experience.[7] Offerors using the first method needed to submit an FPDS-NG report that verified all of the information on the Experience Form, and the GSA explained in the solicitation that the "report does not substantiate all [of the] information" if the "PSC being claimed was not the PSC entered in [the] FPDS-NG [report] . . . ." AR 382; see also id. at 232

---

[7] Integral does not argue that it validated its experience using the second method.

(explaining that if "the report does not provide appropriate verification for all claimed scoring elements," then "verification may be provided by including verification documents identified in [method two]"). Because Integral claimed credit for PSCs that were not entered on the reports, the GSA acted in accordance with the terms of the solicitation when it concluded that Integral did not validate its experience and then deducted the associated points.

Related to the above argument, Integral asserts that the GSA erred by not considering whether Integral validated its claimed experience by submitting the SOWs. Although offerors were required to submit the SOW associated with each project, the SOW was insufficient to substantiate the experience. The solicitation is clear on this point:  Integral's chosen validation method was available only "[i]f the FPDS-NG Report provide[d] verification of all [of the] information on the [Experience Form]." Id. at 382 (emphasis added). The GSA, therefore, was not obligated to consider whether Integral's SOWs validated experience that was not substantiated by an FPDS-NG report.

Integral next argues that the GSA inconsistently evaluated the proposal because it awarded points for Project 1-1 (originally claimed as Project 2-2) even though the associated report identified a different PSC than the PSC on the Experience Form. In making this contention, Integral overlooks that, pursuant to the solicitation offerors were entitled to points for experience with one of the PSCs specified in the solicitation if that experience was validated by an FPDS-NG report. Id. Based on that standard, the GSA's disparate treatment of Project 1-1 was justified because that project was the only one for which Integral submitted a report verifying experience with an eligible PSC. Simply stated, Integral submitted verification that made the project eligible for points. In contrast, the GSA appropriately denied points for Integral's other projects because it did not establish that those projects involved eligible experience; unlike Project 1-1, the reports for the remaining projects identified PSCs that were not listed in the solicitation. The GSA's treatment of Project 1-1, therefore, is in accord with the solicitation and not inconsistent with its evaluation of the remainder of Integral's projects.

Integral's final argument is that the GSA's focus on whether the PSCs on the Experience Forms matched those on the FPDS-NG reports violated the requirement set forth in FAR 15.304(b) that "[e]valuation factors must . . . [s]upport meaningful comparison and discrimination between proposals." FAR 15.304(b). The resolution of this argument turns on the expressed in Blue & Gold Fleet, L.P. v. United States that "[a] party who has the opportunity to object to the terms of a procurement solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a protest action in the Court of Federal Claims." 492 F.3d 1308, 1313 (Fed. Cir. 2007). That rule is applicable here because Integral disputes an evaluation criterion that, as explained above, was evident on the face of the solicitation such that a challenge to that factor needed to be brought before the proposal deadline.[8] The conclusion that Integral waived the

---

[8] The waiver rule expressed in Blue & Gold Fleet is also applicable to all of Integral's other arguments to the extent that they can be construed as a challenge to the reasonableness of the solicitation requirements concerning the first verification method. A protest on such grounds needed to be lodged before proposals were due because, as noted above, the requirement that

right to bring the noted challenge is buttressed by its reliance FAR 15.304(b), which addresses the requirements for evaluation procedures and is "more properly raised in the pre-award context." FirstLine Transp. Sec., Inc. v. United States, 100 Fed. Cl. 359, 388 (2011); see also id. (finding no decisions in which FAR 15.304(b) was applied in the postaward bid protest context).

In sum, Integral fails to demonstrate that the GSA erred when it deducted points from those that Integral claimed for possessing relevant experience. Because Integral does not succeed on the merits of its protest, it is not entitled to costs or injunctive relief. See ARxIUM, Inc. v. United States, 136 Fed. Cl. 188, 198 (2018) ("A lack of success on the merits . . . obviously precludes the possibility of an injunction."); Q Integrated Cos. v. United States, 132 Fed. Cl. 638, 642-43 (2017) ("A protestor thus must prevail on the merits at least in part before the court can grant an award of bid preparation and proposal costs.").

## IV.  CONCLUSION

For the reasons discussed above, the court **DENIES** Integral's motion for judgment on the administrative record and **GRANTS** defendant's cross-motion for judgment on the administrative record. Integral's protest is **DISMISSED.** No costs. The clerk shall enter judgment accordingly.

The court has filed this ruling under seal. The parties shall confer to determine proposed redactions to which all the parties agree. Then, by **no later than Wednesday, December 12, 2018,** the parties shall file a joint status report indicating their agreement with the proposed redactions, **attaching a copy of those pages of the court's ruling containing proposed redactions, with all proposed redactions clearly indicated**.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Chief Judge

---

offerors were required to submit an FPDS-NG report including the necessary PSCs was readily apparent. See Blue & Gold Fleet, 492 F.3d at 1313.